ORAL ARGUMENT NOT YET SCHEDULED

**22-5342**

––––––––––––––––––––––––––––––––––

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
––––––––––––––––––––––––––––––––––

CATO INSTITUTE,

*Plaintiff/Appellant*,

v.

FEDERAL BUREAU OF INVESTIGATION and
U.S. DEPARTMENT OF JUSTICE,

*Defendants/Appellees*.

––––––––––––––––––––––––––––––––––

On Appeal from the United States District Court
For the District of Columbia
(No. 1-20-cv-3338, Honorable James E. Boasberg)

––––––––––––––––––––––––––––––––––

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

**CATO INSTITUTE**

––––––––––––––––––––––––––––––––––

Stephen Stich Match
Matthew Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone:  (312) 243-5900
Facsimile:  (312) 243-5902
Email:  match@loevy.com

*Attorneys for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Appellant Cato Institute has no parent company, and no publicly held company has a ten percent or greater ownership interest in Cato Institute. Cato Institute is a non-profit organization organized under section 501(c)(3) of the Internal Revenue Code. Cato Institute is a public policy research organization—a think tank—dedicated to the principles of individual liberty, limited government, free markets, and peace. Its scholars and analysts conduct independent, nonpartisan research on a wide range of policy issues.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.     Parties and *Amici*

Plaintiff-Appellant is the Cato Institute.

Defendant-Appellees are the Federal Bureau of Investigation and the United States Department of Justice.

There were no *amici* or intervenors in the District Court and there are none in this Court.

### II.    Rulings Under Review

Appellant seeks review of the November 2, 2022 decision of the United States District Court for the District of Columbia, *Cato Institute v. Federal Bureau of Investigation*, No. 20-cv-3338, 2022 WL 16635243 (Nov. 2, 2022) (Boasberg, J.)

granting Appellees' motion for summary judgment and denying Appellant's motion for summary judgment.

## III.    Related Cases

None.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**......................................................i

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES** .........i

**TABLE OF AUTHORITIES** .....................................................................v

**GLOSSARY** ............................................................................. viii

I.    **JURISDICTIONAL STATEMENT**........................................................1

II.    **ISSUES PRESENTED**..............................................................1

III.    **RELEVANT STATUTES** .........................................................1

IV.    **STATEMENT OF THE CASE**.....................................................2

    A. Introduction........................................................................2

    B. Background .........................................................................3

    C. The District Court's decision...............................................7

V.    **SUMMARY OF ARGUMENT**.....................................................8

VI.    **ARGUMENT**.........................................................................11

    A. Standard of review............................................................11

    B. The District Court erred by upholding the FBI's search for non-investigative records in an investigation-only system ...........................12

    C. The District Court erred by upholding the FBI's refusal to search the Guardian database .....................................................14

        1. The District Court improperly granted summary judgment to Appellees without viewing the evidence in the light most favorable to Cato .......................................................16

**2. The District Court improperly denied summary judgment to Cato because there is no genuine dispute about whether all Guardian records are uploaded to Sentinel** ...........................................**24**

**VII.  CONCLUSION** ............................................................................**26**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)** ...............................**27**

**CERTIFICATE OF SERVICE** .............................................................**27**

# <u>TABLE OF AUTHORITIES</u>

*Page*

## *Cases*

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ......................................16, 21

*\*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) ................................................2, 11

*Carney v. DOJ*, 19 F.3d 807 (2d Cir. 1994) .............................................................18

*Cato Inst. v. FBI*, No. 20-cv-3338, ECF No. 27-1 (D.D.C. July 8, 2022)...........4, 14

*Cato Inst. v. FBI*, No. 20-cv-3338, ECF No. 32 (D.D.C. Sept. 2, 2022)................14

*Citizens for Resp. & Ethics in Washington v. DOJ*, 58 F.4th 1255
(D.C. Cir. 2023) .......................................................................................................17

*Colgan v. DOJ*, No. 14-CV-740, 2020 WL 2043828 (D.D.C. Apr. 28, 2020) .........2

*Czekalski v. Peters*, 475 F.3d 360 (D.C. Cir. 2007) ..........................................16, 20

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978).........................................................18

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770 (D.C. Cir. 1981).......................17

*\*Hall & Assocs. v. EPA*, 956 F.3d 621 (D.C. Cir. 2020)............................12, 16, 22

*In re Clinton*, 973 F.3d 106 (D.C. Cir. 2020) ..........................................................18

*Jett v. FBI*, 139 F. Supp. 3d 352 (D.D.C. 2015) .........................................................2

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) ........................................17

*Liverman v. Off. of Inspector Gen*., 139 F. App'x 942 (10th Cir. 2005)................19

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ........17

*Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984) ......................................................17

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015)..................................................11, 17

*\*Negley v. FBI*, 589 F. App'x 726 (5th Cir. 2014)............................................20, 21

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990)...............................11

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992)..........16

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).....................16, 20

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)...............................17

*Stoe v. Barr*, 960 F.3d 627 (D.C. Cir. 2020).......................................................16, 20

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990)..........................................11

*U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518 (6th Cir. 2012) ........19

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999)............11, 12

**Statutes**

5 U.S.C. § 552(a)(3)(A) ..............................................................................................2

5 U.S.C. § 552(a)(3)(C) ..............................................................................................2

**Rules**

Fed. R. Civ. P. 56(a)................................................................................................12

**Other Authorities**

Black's Law Dictionary, *Good Faith* (2019) .........................................................20

DOJ Office of Inspector General, *The Federal Bureau of Investigation's Terrorist Threat and Suspicious Incident Tracking System: Audit Report 09-02*, 15 (Nov. 2008).................................................................................................6

FBI Inspection Division, External Audit and Compliance, *Domestic Investigations and Operations Guide: An Audit of Assessments and Investigations Opened Between May 1, 2013 and April 30, 2014*, 2 (2014).............6

FBI Inspection Division, External Audit and Compliance: *2019 Domestic Investigations and Operations Guide Audit 10/21/2019-11/01/2019*, 6 (2019)........7

Sen. Dick Durbin, Press Release, *Durbin, Grassley Press FBI On Reports Of Widespread Rule-Breaking In Sensitive Investigations* (Mar. 29, 2022) .................7

# GLOSSARY

CRS             Central Records System

DOJ             Department of Justice

FBI             Federal Bureau of Investigation

SSA             Supervisor Special Agent

# I.    JURISDICTIONAL STATEMENT

This case was brought under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and presents a federal question conferring jurisdiction on the District Court.  Venue was proper under 5 U.S.C. § 522(a)(4)(B).

This Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291. This appeal is taken from a final judgment entered by a District Court within the District of Columbia on November 2, 2022.  Plaintiff filed a timely notice of appeal on December 21, 2022.

# II.    ISSUES PRESENTED

This Court's precedent requires agencies to conduct a FOIA search reasonably calculated to locate all responsive records.  Did the District Court err in granting summary judgment to Appellees and denying summary judgment to the Cato Institute on the adequacy of the FBI's search for investigative and non-investigative records, where (a) the search was limited to a records system containing only investigative records, and (b) DOJ and FBI audits show that not all investigative records were indexed to that system?

# III.    RELEVANT STATUTES

"Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and

- 1 -

procedures to be followed, shall make the records promptly available to any person."
5 U.S.C. § 552(a)(3)(A).

"In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system."  5 U.S.C. § 552(a)(3)(C).

## IV.      STATEMENT OF THE CASE

### A.    Introduction.

This is the latest in a line of cases where, in response to a valid FOIA request, the FBI refused to search outside its Central Records System ("CRS") for records that system does not contain.  This Court and others have found the practice unreasonable.  *See, e.g.*, *Campbell v. DOJ*, 164 F.3d 20, 27-29 (D.C. Cir. 1998); *Colgan v. DOJ*, No. 14-CV-740, 2020 WL 2043828, at *5-7 (D.D.C. Apr. 28, 2020) *Jett v. FBI*, 139 F. Supp. 3d 352, 367-68 (D.D.C. 2015).  The District Court disagreed and thus granted summary judgment to Appellees.  But it failed to contend with two critical sets of facts: first, that CRS is limited to investigative records, whereas the request at issue here sought non-investigative records as well; and second, that audits by the FBI and DOJ show that the FBI has routinely failed to take steps necessary for even investigative records to appear in CRS searches.  In doing so, the court mistakenly applied a presumption of good faith to the agency's search—the

presumption only applies to declarations describing the search—and thus violated standard summary judgment rules by placing an evidentiary weight on the scales in favor of the moving party.

In any event, the District Court should have granted summary judgment to Appellant Cato Institute ("Cato"), not Appellees, because the undisputed evidence showed that the FBI did not search all locations reasonably likely to contain responsive records. This Court should reverse and remand with instructions that the District Court order the FBI to conduct a new and adequate search.

### B.    Background.

Cato is a public policy think tank. In 2019, it filed a FOIA request with the FBI for "any records regarding the Cato Institute" using certain specific search terms. J.A.73-74. The request was not limited to investigative records or records of investigative significance, such as emails referring to Cato. *See id*. The request asked the FBI to search several particular locations, including "the FBI Guardian database or any related or successor systems." J.A.74.

Cato filed suit after the FBI had constructively denied the request by failing to respond within FOIA's deadline. J.A.10-11. The FBI then responded. It told Cato that it had located 166 responsive pages, most of which it withheld in full or in part under various FOIA exemptions. J.A.81. Those exemptions are not at issue in this appeal.

- 3 -

The parties then cross-moved for summary judgment on, as relevant here, the adequacy of the FBI's search.  The FBI explained its search through two declarations by Michael G. Seidel of its Record/Information Dissemination Section.  According to Mr. Seidel, the FBI only searched its Central Records System ("CRS").  J.A.32. It did so by searching an automated web-based application called "Sentinel" and manual indices in various field offices not contained on Sentinel.  J.A.34-37.

While the FBI searched only CRS, CRS does not house all FBI records.  In particular, it does not contain non-investigative records: according to Mr. Seidel, it only "comprise[s] an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval."  J.A.33.  And CRS does not index information unless it "is deemed of sufficient significance to warrant indexing for future retrieval."  J.A.34.  Thus, not all investigative records are in CRS: unless an agent deems them of sufficient significance, records will not appear in CRS even if they reflect FBI investigative activity.

Even though CRS is confined to investigative records, the FBI refused to search other locations containing records that do not relate to investigations, including emails that do not concern matters of investigative interest or those deemed insufficiently significant to warrant indexing.  After Cato pointed out this issue in its opening summary judgment brief, *see* Pl.'s Mem. at 15, *Cato Inst. v. FBI*,

- 4 -

No. 20-cv-3338, ECF No. 27-1 (D.D.C. July 8, 2022), the FBI did not attempt to explain how its searches of an investigative system would have located records unrelated to an investigation. It instead repeated without elaboration that responsive emails "would reasonably be expected to be found indexed within the relevant file." J.A.98.

The FBI also refused to search its Guardian system, which the request specified as a location to be searched. J.A.74. According to Mr. Seidel, Guardian is a "classified automated system that records, tracks and shares suspicious activities and threat-related information with law enforcement and other government agency partners." J.A.96-97. Mr. Seidel did not aver that Guardian was not reasonably likely to contain responsive records. Instead, the agency refused to search that system because, he claimed, all Guardian records are uploaded to its Sentinel interface, which the FBI also used to search CRS. J.A.97-98. Thus, per Mr. Seidel, the FBI's CRS Sentinel search would have returned all records in Guardian.

Mr. Seidel offered only one reason for his belief that all Guardian records are uploaded to Sentinel. He stated that "[a]ll Guardian entries must be reviewed by an FBI Supervisor Special Agent. After the SSA approves the incident entry, Guardian automatically generates an FD-71a complaint form, and the information from the FD-71a is automatically entered in the Sentinel system." J.A.97. So if a senior FBI official does not approve the incident entry, the Guardian system does not generate

a complaint form uploaded to Sentinel, and the CRS search of Sentinel would not locate the relevant records.

But Mr. Seidel never stated that Supervisor Special Agents approve every Guardian entry they review.  And while (as Mr. Seidel averred) FBI Supervisor Special Agents may be ***required*** to review the incident entry, Cato introduced evidence that FBI agents have routinely ***violated*** agency regulations that require approval from higher-level officials when initiating investigations.  This evidence consisted of three audits—one conducted by the DOJ Office of Inspector General and two conducted by the FBI Inspection Division—between 2008 and 2019.  The 2008 Audit inspected six FBI field offices and found that "three of the six field offices we visited did not meet" FBI standards requiring supervisory review of Guardian entries.[1]   The 2014 Audit found that 34% of audited cases suffered compliance errors with the "initiation of an Assessment/ Investigation," almost all of which involved the failure to obtain required supervisory approvals.[2]   And the

---

[1] DOJ Office of Inspector General, *The Federal Bureau of Investigation's Terrorist Threat and Suspicious Incident Tracking System: Audit Report 09-02*, 15 (Nov. 2008) https://oig.justice.gov/reports/FBI/a0902/final.pdf ("2008 audit").
[2] FBI Inspection Division, External Audit and Compliance, *Domestic Investigations and Operations Guide: An Audit of Assessments and Investigations Opened Between May 1, 2013 and April 30, 2014*, 2 (2014) https://media.washtimes.com/media/misc/2022/05/19/FBI_Compliance_and_Mitigation_2013-2014.pdf ("2014 audit").

2019 Audit found an even greater noncompliance rate of 70%.[3]  The problems were sufficiently widespread that, shortly after the 2019 audit came to light, the Chairman and Ranking Member of the Senate Judiciary Committee wrote a bipartisan letter seeking more information and an independent review by the DOJ's Office of Inspector General.[4]  Cato thus argued that the audits raised a reasonable inference that FBI personnel do not always seek supervisory review of Guardian entries without which, according to Mr. Seidel, Guardian records would not have been uploaded to Sentinel, and the CRS search would not have returned them.

### C.    The District Court's decision.

The District Court granted Appellees' summary judgment motion and denied Cato's cross-motion.

The District Court credited Mr. Seidel's statement that CRS was likely to contain all responsive records.  It held, citing that declaration, that "information about the requesting organization, the Cato Institute, 'would reasonably be expected to be in the CRS,' which houses 'information about individuals, organizations, and other subjects of investigative interest for future retrieval.'" J.A.111.  The court did

---

[3] FBI Inspection Division, External Audit and Compliance: *2019 Domestic Investigations and Operations Guide Audit 10/21/2019-11/01/2019*, 6 (2019), https://media.washtimes.com/media/misc/2022/03/11/audit.pdf ("2019 audit").

[4] *See* Sen. Dick Durbin, Press Release, *Durbin, Grassley Press FBI On Reports Of Widespread Rule-Breaking In Sensitive Investigations* (Mar. 29, 2022), https://www.durbin.senate.gov/newsroom/press-releases/durbin-grassley-press-fbi-on-reports-of-widespread-rule-breaking-in-sensitive-investigations.

not address or acknowledge Cato's argument that CRS is limited to those "subjects of investigative interest," but that Cato's request was not.

In addressing Cato's argument that the FBI should have searched Guardian, the District Court held that the agency reasonably refused because "whatever responsive records may be found in Guardian would also have been uploaded to the CRS database and therefore would have been returned in a search of the latter." J.A.113. It held that the audits finding widespread and systemic violations of rules requiring supervisory approval—the rules Mr. Seidel said are a predicate to Guardian records appearing in CRS searches—are insufficient to rebut the "presumption of good faith that this Court must grant the agency in its search for responsive records" because Cato did not introduce evidence that those violations occurred "in this case." J.A.114 (cleaned up). But the court issued no holding on whether, absent that supposed presumption, (a) the audits created a genuine issue of material fact as to whether all Guardian records are uploaded to Sentinel, or (b) the FBI introduced sufficient evidence from which a reasonable factfinder could conclude that it met its search burden.

Cato timely appealed. J.A.119.

## V.      SUMMARY OF ARGUMENT

The District Court erred by granting summary judgment to Appellees. Instead, Cato was entitled to summary judgment. Under established circuit

precedent, the FBI was required to search all locations reasonably likely to contain responsive records. The agency claimed that CRS, and only CRS, was that location. Deferring to the FBI, the District Court upheld the search. But its conclusion is wrong in two respects.

First, the CRS database contains only investigative records, while Cato's request included non-investigative records. Neither the District Court nor the FBI explained how a search of an investigation-only database would be reasonably likely to locate responsive non-investigative records. Based on the undisputed facts, it would not. So Cato, not Appellees, was entitled to summary judgment.

Second, the District Court offered no sound reason for its conclusion that a search of the Sentinel system—which the FBI used to search CRS—would locate all records from the FBI's Guardian database. The court improperly discounted the DOJ and FBI audits Cato introduced to show that FBI personnel routinely violate rules requiring supervisory approval, without which, according to the FBI's evidence, a Sentinel/CRS search would not retrieve all responsive Guardian records. It did so based on what it described as the presumption of good faith that must be afforded the agency's search. But while this Court has regularly applied a presumption of good faith to agency declarations that describe a search, it has never afforded that presumption to the search itself. Indeed, as another Circuit has recognized, to do so would violate well-established principles of summary judgment,

- 9 -

under which the court views all facts and reasonable inferences in the light most favorable to the non-moving party—Cato, on Appellees' motion.  By presuming that the FBI's search was adequate, the District Court improperly placed a weight on the scales in its favor.

The District Court's grant of summary judgment on the Guardian search was erroneous for another reason.  Irrespective of the audits, the FBI's own evidence shows that Guardian records do not appear on Sentinel until a supervisor ***approves*** them.  But while the FBI introduced evidence showing that supervisors are required to ***review*** Guardian entries, no evidence speaks to the frequency of their approval, and if a supervisor reviewed an entry and denied it, the record would never make it into Sentinel.  Thus, viewed in the light most favorable to Cato, the FBI failed to meet its burden to show that its Sentinel search would have located all responsive Guardian records.  So irrespective of the audits, the District Court erred in granting summary judgment to Appellees.

Finally, Cato, not Appellees, was entitled to summary judgment on the Guardian search.  The District Court cited no evidence—and the FBI introduced none—on whether FBI supervisors review all Guardian entries, which, again, is a prerequisite to their appearing on the Sentinel search the agency conducted.  The only evidence on the matter are the audits, which show that FBI personnel routinely fail to seek supervisory approval, and by implication that supervisors do not review

- 10 -

all Guardian entries.  Thus, viewed in the light most favorable to the FBI, its refusal to search Guardian was unreasonable.

This Court should reverse.

## VI.    ARGUMENT

### A.    Standard of review.

The sole issue on appeal is whether the District Court properly granted Appellees' motion for summary judgment on the adequacy of the FBI search and denied Cato's cross-motion.  An agency's search obligations are well established.  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  That obligation goes unsatisfied if the agency does not search all locations "likely to turn up the information requested," even if it searched the location most likely to contain responsive records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  And while an agency is not always required to search locations specified by the request, *see Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015), such specifications inform the reasonableness of its search.  *See Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (holding that, in most cases, the FBI need not search beyond CRS "when the FOIA requester does not expressly ask it to do so" because, "[w]hen a request

does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return").

The District Court's standard of review was *de novo*, as is this Court's review of the decision below. *See Valencia-Lucena*, 180 F.3d at 326. Summary judgment on the search issue is appropriate if and only if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Hall & Assocs. V. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020). Thus, "if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome, summary judgment must be denied. FOIA cases are no exception." *Id*.

### B.     The District Court erred by upholding the FBI's search for non-investigative records in an investigation-only system.

The District Court upheld the FBI's CRS-only search because it concluded that CRS was the only location reasonably likely to contain responsive records. J.A.111. But in reaching that conclusion, it failed to acknowledge the undisputed evidence, introduced ***by the FBI***, that CRS was not reasonably likely to contain certain responsive records. Cato, not Appellees, was entitled to summary judgment.

CRS contains only investigative records. According to the agency's declarant, CRS is "where the FBI indexes information about individuals,

- 12 -

organizations, and other subjects of investigative interest for future retrieval."
J.A.39. The system is further limited to information "deemed of sufficient
significance to warrant indexing for future retrieval." J.A.34. Thus, it lacks records
that are not investigative, either because they were never candidates for use in an
investigation or because an FBI official deemed them of insufficient investigative
interest, such as emails between FBI staff that discuss Cato without reference to an
investigation.

But Cato's request was not limited to investigative records. It sought "any
records regarding the Cato Institute" using certain search terms and parameters.
J.A.73-74. CRS would not likely contain non-investigative records regarding Cato.
So the FBI's search was inadequate by its own undisputed evidence.

That evidence also showed where the FBI should have searched. According
to Mr. Seidel, the agency's automated Sentinel search resulted in leads that caused
it to search manual indices in certain field offices. J.A.37-38. It chose those offices
based on what Mr. Seidel described as "reasonable leads found in the CRS search
(potentially responsive records in CRS search were from these same locations) and
based on information gleaned from the request letter." *Id*. If manual CRS indices
from those field offices contain investigative information, it stands to reason that

other records from those field offices—such as email—would likely contain non-investigative information.[5]  The FBI introduced no evidence to rule that out.

Though Cato made these arguments below, the District Court did not contend with them.  *See* Pl.'s Mem. at 15-18, *Cato Inst. v. FBI*, No. 20-cv-3338, ECF No. 27-1 (D.D.C. July 8, 2022); Pl.'s Reply Mem. at 3-4, *Cato Inst. v. FBI*, No. 20-cv-3338, ECF No. 32 (D.D.C. Sept. 2, 2022).  It instead apparently deferred to Mr. Seidel's conclusion that any search outside CRS would be "duplicative."  J.A.112.  But neither Mr. Seidel nor the District Court explained how a search for non-investigative records could duplicate a search of a system limited to investigative records.  To state the proposition is to refute it.

### C.    The District Court erred by upholding the FBI's refusal to search the Guardian database.

The District Court rejected Cato's argument that the FBI should have searched the Guardian database.  It did not hold, and the FBI did not argue, that the Guardian database was not reasonably likely to contain responsive records.  It held only that

---

[5] Though at points Mr. Seidel appears to implicitly distinguish manual index searches from what he calls a CRS search, he clearly defines the manual indices to be part of CRS.  *See* J.A.35 ("Older CRS records that were not indexed into UNI as a result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "'manual indices.'"); J.A.34 (defining "UNI" as a former "automated index of the CRS"). The term "CRS search" presumably refers to an automated search of the parts of CRS other than the manual indices.  Thus, as parts of CRS, the manual indices only contain investigative records.

any such search would duplicate the agency's Sentinel search of CRS.  J.A.114.  But Mr. Seidel averred only that "[a]ll Guardian entries must be reviewed by an FBI Supervisor Special Agent," and that, if the entry is "approved," it is "automatically entered in the Sentinel system" (*i.e.*, CRS).  J.A.97.  He did not testify that every "reviewed" incident is "approved."  And Cato introduced evidence—the audits— that agency officials have routinely violated requirements to secure approval related to investigations.  Thus, a reasonable factfinder could conclude that not all Guardian entries are uploaded to CRS and that a Guardian search would not duplicate the agency's search of CRS.

In granting summary judgment to the FBI, the District Court wrongly supplanted the traditional summary judgment standard—where courts view the evidence in the light most favorable to the non-moving party—with a FOIA-specific one where the agency's search is presumed adequate.  In any event, the FBI's audit is the only evidence of its actual practices, and the audit shows that FBI agents regularly fail to seek or secure the types of approval necessary for Guardian documents to automatically upload to Sentinel.  Thus, summary judgment should have issued to Cato.

- 15 -

      **1.**     **The District Court improperly granted summary judgment to Appellees without viewing the evidence in the light most favorable to Cato.**

FOIA cases follow standard summary judgment principles. *See Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (R.B. Ginsburg, J.) ("This circuit applies in FOIA cases the same standard of appellate review applicable generally to summary judgments."). Under those principles, summary judgment is proper only if the law "dictate[s] a single outcome" after "taking all of the facts and reasonable inferences from them in the light most favorable to the non-movant." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020). It must be denied "if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant." *Id*.

These principles entail that courts on summary judgment "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). Instead, the non-movant's evidence "is to be believed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Cases with government agency movants are no exception. *See Czekalski v. Peters*, 475 F.3d 360, 362, 363 (D.C. Cir. 2007) (reversing grant of summary judgment in favor of agency and holding that court must "draw all reasonable inferences in [the non-moving party's] favor, and eschew making credibility determinations or weighing the evidence"); *Stoe v. Barr*, 960 F.3d 627, 629, 638-39 (D.C. Cir. 2020) (reversing

grant of summary judgment in favor of agency and holding that credibility determinations and weighing evidence "are matters for a jury").

Sometimes, when describing its approach to summary judgment in FOIA search cases, this Court refers to a presumption that an agency declarant acts in good faith. The following statement is typical: "Agency affidavits—so long as they are 'relatively detailed and non-conclusory'—are 'accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), further quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).[6]

The presumption of good faith originated as a ground to dispense with discovery or *in camera* review of purportedly exempt records. In *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977), this Court held that *in camera* inspection is unwarranted if an agency provides a declaration, unless that

---

[6] The Court sometimes deploys a similar concept when discussing what an agency must do to establish an exemption: "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Citizens for Resp. & Ethics in Washington v. DOJ*, 58 F.4th 1255, 1263 (D.C. Cir. 2023) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009), further quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

declaration "is vague, its claims too sweeping, or there is a reason to suspect bad faith." *Id*. at 262. The next year, in *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), the Court rejected the plaintiff's argument that "even if [the agency's] affidavits are otherwise sufficient to support summary judgment in favor of the CIA, discovery is required here because there is reason to doubt the Agency's good faith," holding that on the facts of that case there was no reason to impugn the agency's good faith. *Id*. at 353.

The theory is that because an agency declarant is presumed to provide their declaration in good faith, if the declaration addresses all the relevant issues, most requesters will not require additional information or evidence in advance of summary judgment proceedings. Thus, discovery or *in camera* review will often be unnecessary to test the agency's claims on summary judgment. *See In re Clinton*, 973 F.3d 106 (D.C. Cir. 2020) ("Although, as a general rule, discovery in a FOIA case is rare, courts may order limited discovery where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.") (cleaned up). Other circuits are unified in this understanding of the presumption. *See Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are

- 18 -

adequate on their face.") (cleaned up); *U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 527 (6th Cir. 2012) ("One such alternative procedure [to *in camera review*] is a detailed affidavit, which is entitled to a presumption of good faith."); *Liverman v. Off. of Inspector Gen.*, 139 F. App'x 942, 945 (10th Cir. 2005) (same as *Carney*).

Thus, an unrebutted presumption of good faith, coupled with a detailed and nonconclusory declaration, means that the Court can **adjudicate** summary judgment without further proceedings. But it has no bearing on whether the agency is **entitled** to summary judgment. In a passage worth quoting at length, the Fifth Circuit made the distinction clear when correcting a district court's mistaken articulation of the presumption:

> The court was correct that the agency's affidavits are entitled to a presumption of good faith, but that does not mean that the agency is entitled to a presumption that its search was adequate. Instead, an agency's affidavits are accorded a presumption of legitimacy that assumes that the agency is telling the truth in its affidavits. Absent countervailing evidence by the plaintiff, the court will assume that the agency is telling the truth about its search, but that does not mean that the court must accept the agency's assertion that the search was adequate.
>
> A plaintiff can overcome the presumption of legitimacy only by showing that the agency acted in bad faith, but he can defeat summary judgment on the adequacy of the search by presenting evidence that the affidavits do not describe an adequate search. A contrary rule would impose too high a burden on the plaintiff and would be contrary to the summary-judgment standard, allowing an agency affidavit definitely to settle the adequacy of a search in the face of evidence that the search was inadequate. Instead, the plaintiff can prevent summary judgment

- 19 -

by introducing evidence that creates a genuine dispute as to the
adequacy of the search.

*Negley v. FBI*, 589 F. App'x 726, 730 (5th Cir. 2014) (cleaned up).

In other words, notwithstanding the presumption, it is the role of the
factfinder, not the court on summary judgment, to weigh the requester's evidence
against the declarant's testimony. *See Reeves*, 530 U.S. at 150; *Czekalski*, 475 F.3d
at 363, *Stoe*, 960 F.3d at 639. A rational factfinder does not have to believe
something just because the government said so—especially if the requester
introduces contrary evidence. This remains true even if the factfinder has no reason
to believe that the agency declarant has gone outside the bounds of good faith by,
for example, testifying in an intentionally deceptive way. *See* Black's Law
Dictionary, *Good Faith* (2019) (defining "good faith" to mean, *inter alia*, "honesty
in belief or purpose" and "absence of intent to defraud or to seek unconscionable
advantage"). Like anyone else, an agency declarant can be both honest and wrong.
Thus, defeating an agency's motion for summary judgment can require nothing more
of a requester than introducing evidence (or pointing to the agency's own evidence)
that, on its own, could persuade a rational factfinder. Anything more would usurp
the factfinder's role and violate the principles of summary judgment.

The District Court violated those principles in two ways, each of which
independently requires reversal. First, it improperly discounted Cato's evidence that
the FBI regularly violated its own rules requiring supervisory review before

- 20 -

initiating an investigation: audits into the matter by the DOJ and FBI. J.A.114. If this evidence "is to be believed," as it must be on the FBI's motion for summary judgment, *Anderson*, 477 U.S. at 255, then it raises a reasonable inference that, here too, FBI agents do not always seek supervisors' review. And, as Mr. Seidel described it, that supervisor's review is necessary for Guardian records to be uploaded to Sentinel, without which the agency's search would not have been adequate.

The District Court discounted this evidence only by misconstruing the presumption of good faith. In particular, it held that "there is no evidence of any wrongdoing or agency failure to comply with its recordkeeping rules in this case sufficient to rebut the presumption of good faith that this Court must grant the agency *in its search for responsive records*." J.A.114 (cleaned up, emphasis added). But as *Negley* and this Court's cases make clear, the FBI is not entitled to a presumption of good faith "in its search for responsive records." *Id*.; *see also Negley*, 589 F. App'x at 730. The presumption extends only to the declaration describing the search.[7] By presuming the search's adequacy and requiring Cato to rebut that presumption, the District Court failed to properly apply the rules of summary judgment.

---

[7] Cato does not and need not suggest that Mr. Seidel submitted his declaration with a dishonest purpose. Rather, it claims that evidence from both his declaration and elsewhere entail that he is wrong that the agency's search was adequate.

Had the District Court properly applied those rules, it should have denied the FBI's motion. According to the 2008 Audit, "three of the six field offices we visited did not meet" FBI standards requiring supervisory review of Guardian entries. 2008 Audit at 15. The 2014 Audit found that 34% of audited cases suffered compliance errors with the "initiation of an Assessment/ Investigation," almost all of which involved the failure to obtain required supervisory approvals. 2014 Audit at 2. And the 2019 Audit found an even greater noncompliance rate of 70%. 2019 Audit at 6. While none of these audits referred specifically to the FBI's recordkeeping "in this case," as the District Court said was required to rebut what it saw as a presumption that the search was adequate, J.A.114, they at least lead to a "reasonable view of the record" under which some FBI agents do not submit Guardian entries for their supervisors' review, without which they would not appear in a Sentinel search— particularly absent any sworn testimony that agents sought supervisory review for all records responsive to Cato's request. *Hall*, 956 F.3d at 630. Summary judgment for the FBI was unwarranted.

Second, the District Court failed to appreciate the FBI's own evidence that, viewed in the light most favorable to Cato, demonstrates the inadequacy of its search. Again, Mr. Seidel testified that searching Guardian was unnecessary because

- 22 -

Guardian records are uploaded to Sentinel, which the FBI used to search CRS.[8]  But he offered just one reason to believe that, purportedly, all Guardian records are uploaded to Sentinel: Supervisor Special Agents are required to "review[]" Guardian entries, which are uploaded to Sentinel only after that supervisor "approves" it. J.A.97.  Yet Mr. Seidel did not aver that supervisors approve every entry they review—he said nothing about the frequency with which entries are approved.  And, viewing this evidence in the light most favorable to Cato, a reasonable factfinder could conclude that supervisors do not approve every entry they review.

The District Court misunderstood the significance of this evidence and thus failed to properly address it.  The court described the evidence in the following way:

> Cato also asserts that because Guardian pre-case incident and assessment entries are only indexed into CRS if a supervisor reviews and approves the entries, certain unapproved entries may not be indexed into CRS and available for search in that system.  As support for this argument, it points to FBI internal audits that have revealed widespread instances of the FBI not complying with its own rules regarding the initiating and handling of assessments, creating the possibility that unapproved Guardian entries may exist outside of CRS.

---

[8] Recall that, according to Mr. Seidel, Sentinel is a "web-based interface" that the FBI uses to locate certain records.  J.A.35.  That includes records indexed in CRS, *see id.*, as well as records from the Guardian database that have received the necessary supervisory approval, *see* J.A.97.  It is unclear if Guardian records once uploaded to Sentinel (a) become indexed to CRS, or (b) are not encompassed in CRS but can be found on Sentinel in some other way.  But that likely does not matter because, either way, Mr. Seidel testified that a Sentinel search would locate the Guardian records.  *See* J.A.98.

J.A.114 (cleaned up). This passage conflates the evidence that agents do not submit entries for *review*—the audits—with the evidence that supervisors do not ***approve*** every entry they review: Mr. Seidel's declaration. It only addresses the former (incorrectly, *see supra*). But the latter alone shows that not all Guardian entries are uploaded to Sentinel. For, as Mr. Seidel describes it, uploading to Sentinel depends on a supervisor's actual approval, not merely his or her review. The District Court does not address that point at all. Had it done so, it should have denied the Appellees' motion for summary judgment.

> **2.    The District Court improperly denied summary judgment to Cato because there is no genuine dispute about whether all Guardian records are uploaded to Sentinel.**

Finally, Cato was entitled to summary judgment even viewing the evidence in the light most favorable to the FBI. As discussed above, the audits show that the FBI has regularly violated its rules regarding supervisory review, without which Guardian documents are not uploaded to Sentinel. This constitutes evidence demonstrating the inadequacy of the Sentinel-only search for Guardian records.

The FBI introduced no contrary evidence. The only evidence speaking to even a related issue is a paragraph of Mr. Seidel's second declaration stating that "[a]ll Guardian incidents … are serialized in Sentinel." J.A.97. But as the previous paragraph in his declaration makes clear, Mr. Seidel drew that conclusion solely based on the requirement that "[a]ll Guardian entries must be reviewed by an FBI

- 24 -

Supervisor Special Agent." *Id*. For, according to Mr. Seidel, the incident "is automatically entered in the Sentinel system" only "[a]fter the [Supervisor Special Agent] approves the incident entry." *Id*.

But the ***existence*** of the rule requiring supervisory approval is not evidence that agents ***followed*** the rule. The only evidence bearing on that question are the audits showing that they have routinely violated it. And if agents violated the rule requiring supervisory approval, then, per Mr. Seidel, not all Guardian records were uploaded to Sentinel. Locating the Guardian records thus required the FBI to search Guardian. This it refused to do. So Cato was entitled to summary judgment. The District Court erred by denying its motion.

## VII.     CONCLUSION

The Court should reverse the judgment of the District Court granting summary judgment to Appellees and denying summary judgment to Cato, and should remand with instructions that the District Court order the FBI to conduct a new and adequate search, including an email search of the twelve field offices for which the FBI searched manual indices and a search of the Guardian database.

Dated: March 27, 2023

Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew V. Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone: (312) 243-5900
Facsimile: (312) 243-5902
Email: matt@loevy.com
FOIA@loevy.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

I certify that the foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,021 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit R. 32(e)(1).

I certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: March 27, 2023        */s/ Stephen Stich Match*
                            Stephen Stich Match
                            *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, I caused copies of the foregoing Appellant's Opening Brief to be served on all counsel of record via the Court's ECF filing system.

Dated: March 27, 2023        */s/ Stephen Stich Match*
                            Stephen Stich Match
                            *Counsel for Plaintiff-Appellant*